United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CAVE CONSULTING GROUP, INC.,

Plaintiff,

v.

OPTUMINSIGHT, INC.,

Defendant.

Case No. 15-cv-03424-JCS

**ORDER REGARDING DISCOVERY LETTER BRIEF**

Re: Dkt. No. 209

## I. INTRODUCTION

In accordance with the procedures set by this Court for raising discovery disputes, Plaintiff Cave Consulting Group, Inc. ("CCGroup") and OptumInsight, Inc. have met and conferred in person and filed a joint letter brief raising six issues. *See generally* Joint Letter (dkt. 209). The Court heard argument on November 3, 2017, and now resolves those disputes as follows.[1]

## II. DISPUTE REGARDING THE PREVIOUS DISCOVERY ORDER

### A. Procedural Background

On October 25, 2016, the Court issued an order granting in part and denying in part CCGroup's motion to compel documents based on waiver of the attorney-client privilege and the work product doctrine. *See generally* Order Re Mot. to Compel (dkt. 138).[2] The Court held that OptumInsight's predecessor Symmetry, Inc. waived attorney-client privilege as to certain topics by offering in a USPTO reexamination proceeding its attorney's affidavit regarding the conception date of U.S. Patent No. 5,835,897 (the "'897 patent") and whether Symmetry's 1994 response to a

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

[2] *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-cv-3424-JCS, 2016 WL 6216696 (N.D. Cal. Oct. 25, 2016), *amended and superseded by* 2016 WL 7475820. Citations herein to this Court's previous orders refer to the pagination of the versions in the Court's ECF docket.

1    request for proposal ("RFP") from Aetna constituted an invalidating offer for sale. *Id.* at 16.  The

2    Court determined that the waiver continued as to documents created and communications

3    occurring after the date of disclosure, and that it applied to OptumInsight after its merger with

4    Symmetry in 2007, but set a cutoff date of April 28, 2014 to allow OptumInsight to defend itself

5    fairly and effectively in the case at hand. *Id.* at 16, 18–19.

6            With respect to work product protection, the Court relied on the Federal Circuit's

7    explanation of how waiver applies to that doctrine: "'[W]ork product waiver is not a broad waiver

8    of all work product related to the same subject matter like the attorney-client privilege.  Instead,

9    work-product waiver only extends to "factual" or "non-opinion" work product concerning the

10   same subject matter as the disclosed work product.'" *Id.* at 13 (quoting *In re EchoStar Commc'ns

11   Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006)).  Applying that rule to the case at hand, the Court

12   held as follows:

13           [Work product] protection is waived by Symmetry's disclosure of
             the process by which [its counsel] Rosenbaum reached his legal
14           conclusion that the '897 patent was not subject to a statutory bar as a
             result of the Aetna RFP Response and "decided to file the
15           information . . . in the . . . Information Disclosure Statement." *See*
             Brophy Decl. Ex. B (Rosenbaum Aff.) ¶¶ 5−8. Where Symmetry
16           presented its counsel's investigation and legal conclusion as a sword
             to persuade the USPTO to rule in its favor in the reexamination, it
17           cannot also rely on the work product doctrine as a shield to bar
             discovery of documents prepared or gathered during that
18           investigation and that serve as a basis for that legal conclusion, nor
             other material related to the same subject matter. *Cf. EchoStar*, 448
19           F.3d at 1304 (discussing waiver of work product protection where a
             client asserts an advice of counsel defense). Such waiver is limited
20           to the same scope as the attorney-client privilege waiver discussed
             above, including the cutoff date of April 28, 2014. Moreover, work
21           product protection is waived only as to "'factual' or 'non-opinion'
             work product"; there is no waiver as to counsel's "mental
22           impressions, conclusions, opinions, or legal theories." *See id.* at
             1302 (citation omitted).
23

24   *Id.* at 18 (ellipses in original).  The parties' present dispute focuses on the last sentence of the

25   passage above, addressing the distinction between "fact" and "opinion" work product.

26           OptumInsight moved for reconsideration of that order, or in the alternative for leave to file

27   an interlocutory appeal.  The Court denied that motion as to reconsideration but granted leave to

28   appeal, and issued an amended order identical to the first order on the motion to compel except for

1   the addition of a paragraph finding the matter suitable for interlocutory appeal pursuant to 28

2   U.S.C. § 1292.  *See* Order Denying Leave to File Mot. for Reconsideration (dkt. 160);[3] Am. Order

3   Re Mot. to Compel (dkt. 161)[4] at 22.  The Federal Circuit disagreed with this Court's conclusion

4   that § 1292 applied and therefore dismissed the appeal, but noted that its dismissal was without

5   prejudice to OptumInsight petitioning for mandamus.  *See Cave Consulting Grp., Inc. v.*

6   *OptumInsight, Inc.*, No. 2017-108 (Fed. Cir. Feb. 24, 2017) (unpublished, available in the record

7   of this case at dkt. 168).  OptumInsight subsequently petitioned for mandamus, arguing primarily

8   that this Court erred in applying Symmetry's waiver to OptumInsight after the two companies

9   merged, and although the Federal Circuit held mandamus review to be appropriate, it held that this

10  Court did not abuse its discretion and therefore declined to grant relief.  *In re OptumInsight, Inc.*,

11  No. 2017-116, 2017 U.S. App. LEXIS 13483 (Fed. Cir. July 20, 2017) (available in the record of

12  this case at dkt. 200).  The Federal Circuit's order does not address the scope of waiver of work

13  product protection separately from waiver of attorney-client privilege, nor does it address the

14  distinction between "fact" and "opinion" work product.  *See id.*

15  ### B.    Present Arguments

16  In the joint letter now before the Court, CCGroup argues that "OptumInsight contends that

17  it is entitled to continue withholding all post-merger attorney-client communications because those

18  documents <u>constitute</u> opinion work product," a position that CCGroup contends conflicts with

19  OptumInsight's prior representations regarding the vast scope of documents affected by the

20  Court's previous order.  Joint Letter at 1.  Based on *EchoStar*, CCGroup argues that OptumInsight

21  should be required to produce its attorneys' opinion letters and similar documents so long as they

22  were disclosed to the client (OptumInsight), treating only documents maintained internally by

23  OptumInsight's counsel and not disclosed to OptumInsight as "opinion" work product exempt

24  from the disclosure requirement.  *Id.* at 1–2.

25  OptumInsight asserts that it in fact produced "approximately 1400 previously-privileged

26

---

27  [3] *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-cv-3424-JCS, 2016 WL 7475581 (N.D. Cal. Dec. 29, 2016).

28  [4] *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-cv-3424-JCS, 2016 WL 7475820 (N.D. Cal. Dec. 29, 2016).

1    pages" before the Court issued its order and "more than 500 additional pages" in response to the

2    Court's order—of a total production of more than 1.4 million pages—and that CCGroup has not

3    challenged any specific privilege log entries for documents that OptumInsight continues to

4    withhold. *Id.* at 2. OptumInsight contends that "the Court's citation of *Echostar* [sic] [does not]

5    overrule[] decades of law establishing the lines between factual and opinion work product," and

6    that "*EchoStar* does not change . . . Ninth Circuit law." *Id.* at 2–3.[5] Specifically, OptumInsight

7    relies on the Ninth Circuit's decision in *Republic of Ecuador v. Mackay*, 742 F.3d 860 (9th Cir.

8    2014), where that court stated that "'"[o]pinion work product" represents the core types of work

9    product protected under *Hickman*, namely an attorney's mental impressions, conclusions, opinions

10    or legal theories developed in anticipation of litigation'" and that such work product "'is virtually

11    undiscoverable.'" Joint Letter at 2 (quoting *Republic of Ecuador*, 742 F.3d at 869 n.3).

12    **C.    Analysis**

13    As stated in the Court's previous order, waiver of work product protection "occurs only

14    'where disclosure of the otherwise [protected] documents is made to a third party, and that

15    disclosure enables an adversary to gain access to the information.'" Am. Order Re Mot. to

16    Compel at 13 (quoting *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal.

17    2007)). In such circumstances, "'work-product waiver only extends to "factual" or "non-opinion"

18    work product concerning the same subject matter as the disclosed work product.'" *Id.* (quoting

19    *EchoStar*, 448 F.3d at 1302).

20    The distinction between "fact work product" and "opinion work product" is perhaps most

21    commonly applied in the context of Rule 26(b)(3) of the Federal Rules of Civil Procedure, which

22    codifies work product protection but allows for discovery of protected material on a showing of

23    substantial need, so long as the court "protect[s] against disclosure of the mental impressions,

24

25

26

27

28

---

[5] OptumInsight appears to argue now that Ninth Circuit rather than Federal Circuit law applies to this dispute, despite having previously argued successfully to the Federal Circuit that Federal Circuit law governs the waiver doctrines at issue, *see In re OptumInsight*, 2017 U.S. App. LEXIS 13483, at \*5, after earlier failing to persuade this Court that Ninth Circuit law applied, *see* Opp'n to Mot. to Compel (dkt. 129) at 3; Am. Order Re Mot. to Compel at 13 n.6. The Court continues to hold that Federal Circuit law applies, although, once again, it is not apparent that the outcome would differ under Ninth Circuit law.

conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 23(b)(3). The "virtually undiscoverable" language on which OptumInsight now relies from *Republic of Ecuador* derives from a case considering that doctrine, and holding that opinion work product is "virtually undiscoverable" based on a showing of need. *See Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997) (citing Fed. R. Civ. P. 26(b)(3); *Upjohn Co. v. United States*, 449 U.S. 383, 401–02 (1981)); *see also Upjohn*, 449 U.S. at 401–02 (also considering the types of documents that can be obtained based on a showing of need); *Republic of Ecuador*, 742 F.3d at 869 n.3 (quoting *United States v. Deloitte LLP*, 610 F.3d 129, (D.C. Cir. 2010) (also considering the substantial need test and in turn quoting *Vinson & Elkins*)).[6] It is not clear from *Republic of Ecuador* and similar authorities that the same rule holds true where a party has waived work product protection as to certain subject matter.

A divide between fact and opinion work product has also been adopted in cases, like here, considering the scope of waiver. *EchoStar,* cited and relied on by this Court's previous order, was one such case, stating that "work-product waiver only extends to 'factual' or 'non-opinion' work product concerning the same subject matter as the disclosed work product." *See* 448 F.3d at 1302. The Federal Circuit derived that test from a Fourth Circuit case, which described its reasoning as follows:

> We think that when there is subject matter waiver, it should not extend to opinion work product for two reasons.
>
> First and most generally, opinion work product is to be accorded great protection by the courts. While certainly actual disclosure of pure mental impressions may be deemed waiver, and while conceivably there may be indirect waiver in extreme circumstances, we think generally such work product is not subject to discovery. While, as we recognized in *Duplan,* the Supreme Court's reasoning in [*United States v. Nobles*, 442 U.S. 225 (1975),] necessarily implies that the privilege derived from the work product doctrine is not in all cases absolute, *see Duplan* [*Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1223 (4th Cir. 1976)], the plain language

---

[6] *Republic of Ecuador* itself considered Rule 26(b)(3)'s clause providing that it is "subject to Rule 26(b)(4)," which in turn relates to information provided to expert witnesses—an issue distinct from both the waiver doctrine at issue here and the substantial need test considered in cases like *Upjohn*, *Deloitte*, and *Vinson & Elkins*. *See Republic of Ecuador*, 742 F.3d at 868–71.

United States District Court
Northern District of California

of Fed. R. Civ. P. 26(b)(3) suggests especial protection for opinion work product . . . .

Secondly, the underlying rationale for the doctrine of subject matter waiver has little application in the context of a pure expression of legal theory or legal opinion. As we noted in *Duplan,* the Supreme Court applied the concept in *Nobles*: ["]where a party sought to make affirmative testimonial use of the very work product which was then sought to be shielded from disclosure.["] 540 F.2d at 1223. There is relatively little danger that a litigant will attempt to use a pure mental impression or legal theory as a sword and as a shield in the trial of a case so as to distort the factfinding process. Thus, the protection of lawyers from the broad repercussions of subject matter waiver in this context strengthens the adversary process, and, unlike the selective disclosure of evidence, may ultimately and ideally further the search for the truth.

*In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988); *see EchoStar*, 448 F.3d at 1302 (citing *Martin Marietta*). The Fourth Circuit went on to hold that the party asserting the privilege had the burden to establish that documents it withheld contained opinion work product, and that documents should be produced with "pure legal theories, impressions, or opinions" redacted. *Martin Marietta*, 856 F.2d at 626. For example, as discussed in a footnote of that opinion, protection was waved as to transcripts of audit interviews as well as "notes and memoranda on these interviews . . . summarizing in substance and format the interview results," but redaction would be appropriate for hypothetical "marginal notations on such documents such as: 'This person does not appear to be credible; let's not call him as a witness if we have to go to trial on this one.'" *Id.* at 626 n.2.

In *EchoStar*, the Federal Circuit applied the rule from *Martin Marietta* in the context of waiver through assertion of an advice-of-counsel defense, identifying three categories of work product at issue:

(1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client.

*EchoStar*, 448 F.3d at 1302. The court quickly disposed of this first category, indicating that its finding of a waiver of attorney-client privilege resolved the issue as to work product protection as

1   well.  *See id.* (stating only "as to the first category, we already noted in section A that when a party

2   relies on the advice-of-counsel as a defense to willful infringement the party waives its attorney-

3   client privilege for all communications between the attorney and client, including any

4   documentary communications such as opinion letters and memoranda," before moving on to the

5   other two categories of work product).  Later, in the context of addressing why the second

6   category (opinions not disclosed to the client) were not discoverable, the court further explained

7   its holding as to the first category:

8             Upon   waiver   of   attorney-client   privilege,   communicative
          documents, such as opinion letters, become evidence of a non-
9             privileged, relevant fact, namely what was communicated to the
          client, *see Nobles,* 422 U.S. at 239 n. 14, 95 S.Ct. 2160 ("[W]here ...
10            counsel attempts to make a testimonial use of [work-product]
          materials the normal rules of evidence come into play with respect
11            to . . . production of documents."); however, counsel's legal
          opinions and mental impressions that were not communicated do not
12            acquire such factual characteristics and are, therefore, not within the
          scope of the waiver.
13

14   *Id.* at 1303–04.  As a result, the only category that the *EchoStar* court characterized as "so-called

15   'opinion' work product" was the "second category of work product, which is never communicated

16   to the client." *Id.* at 1303.  The court held that the third category was discoverable because even

17   where such documents do not specifically recount what was communicated to the client, work

18   product that "references a specific communication to the client . . . will aid the parties in

19   determining what communications were made to the client and protect against intentional or

20   unintentional withholding of attorney-client communications from the court," although it

21   instructed the parties to "take special care to redact" from such documents "legal analysis that was

22   not communicated." *Id.* at 1304.

23            Although the waiver in *EchoStar* was based on assertion of an advice-of-counsel defense,

24   which CCGroup does not claim OptumInsight has asserted here, the rule as stated in that case does

25   not rely on the reason for the waiver, only the fact that attorney-client privilege had been waived.

26   *See id.* at 1303 ("Upon waiver of attorney-client privilege, communicative documents, such as

27   opinion letters, become evidence of a non-privileged, relevant fact, namely what was

28   communicated to the client . . . .").  This Court is bound by the Federal Circuit's statement of the

7

1    rule. *See* Am. Order Re Mot. to Compel at 13 n.6 (holding that Federal Circuit law governs

2    waiver of privilege and work product protection in this case). Moreover, this framework comports

3    with the fairness rationale of subject matter waiver, because it "prevent[s] a party from using the

4    advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by

5    [thereafter] asserting privilege"—or work product protection—"to unfavorable advice." *See*

6    *EchoStar*, 448 F.3d at 1303. The opinions of counsel that Symmetry voluntarily disclosed in the

7    reexamination proceeding regarding the conception date of the '897 patent and related topics

8    "ought in fairness to be considered together" with other opinions of counsel that Symmetry or

9    post-merger OptumInsight received on those subjects. *See* Fed. R. Evid. 502(a)(3). As in

10   *EchoStar*, the waiver of privilege as to those topics brings such opinions—to the extent actually

11   communicated to the client—within the scope of "fact" work product and within the scope of

12   waiver of that protection.

13         Accordingly, in addition to the documents produced thus far based on the waiver of

14   attorney client privilege, OptumInsight shall produce documents covered by the first and third

15   categories of work product detailed in EchoStar. Moreover, the *EchoStar* opinion, like the parties'

16   present arguments, primarily addresses categories of documents that contain at least some form of

17   opinions of counsel. The discussion above should not be taken to undermine OptumInsight's

18   obligation to produce a fourth category of documents that could be called "pure" fact work

19   product—i.e., material that does not reveal attorneys' opinions or mental impressions—regardless

20   of whether such work product has been disclosed to a client. *See* Am. Order Re Mot. to Compel at

21   18 (holding that OptumInsight waived work product protection as to fact work product related to

22   the topics at issue). The Court further notes that the distinction between fact and opinion work

23   product often requires redaction of counsel's opinions and impressions from documents that also

24   contain factual material. *See, e.g.*, *EchoStar*, 448 F.3d at 1304; *Martin Marietta*, 856 F.2d at 626

25   & n.2.

26         If OptumInsight has not yet produced documents, or portions thereof, that are subject to

27   discovery based on the reasoning of this order, the order granting the motion to compel, and the

28   order denying reconsideration, it must do so no later than November 17, 2017.

8

**III.    RULE 502(d) ORDER**

In an effort to "prevent CCGroup from arguing that efforts by OptumInsight to provide documents . . . and testimony implicated by the Court's waiver order expand the scope of the waiver," OptumInsight seeks an order under Rule 502(d) of the Federal Rules of Evidence.  Joint Letter at 3.  That Rule provides that a "federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding."  Fed. R. Evid. 502(d). OptumInsight asks the Court to enter the following order: "Disclosure of documents or testimony relating to the subject matter of the Court's Amended Order Regarding Motion to Compel, Doc. 161, does not effect a further waiver of attorney-client privilege, work product protection, or other recognized privilege or protection."  Joint Letter at 3.  OptumInsight contends that such an order is particularly important for deposition testimony, where "perfect split-second line-drawing is difficult, and predicting witness's answers is even more difficult."  *Id.*

CCGroup "has no objection to OptumInsight's proposed order as it relates to document production," but "cannot agree that deposition testimony cannot result in a further waiver because it cannot predict what that testimony might be."  *Id.*  CCGroup asserts, however, that it "has no intention to use OptumInsight's attempts at good faith compliance with the Court's Motion to Compel Order to expand the scope of the waiver."  *Id.*

Based on the parties' representations and concerns, the Court hereby ORDERS that disclosure of documents or testimony relating to one of the seven topics listed at page 16, lines 10 through 15, of the Court's December 29, 2016 order does not effect a further subject matter waiver of attorney-client privilege, work product protection, or other recognized privilege or protection, so long as such disclosure is made in a good faith effort to comply with OptumInsight's existing waiver of privilege recognized by the Court.  However, any such disclosure is a waiver as to the document or testimony actually disclosed, subject to the clawback provision of Rule 26.  In case of a dispute as to whether OptumInsight or its witnesses disclosed documents or testimony in good faith, the burden would be on CCGroup to demonstrate that such disclosure was not made in good faith.

United States District Court
Northern District of California

## IV.    CCGROUP'S CLAWBACK REQUEST

CCGroup seeks to claw back four copies of two email chains related to CCGroup's discussions with counsel regarding its competitors.  Joint Letter at 3–5; *see also id.* Ex. X (copies of the email chains at issue, lodged with the Court but not filed in the record).  OptumInsight does not dispute that attorney-client privilege and/or work product protection apply to those documents, but "seeks leave to submit them to Judge Davila for his review," based on the theory that the emails demonstrate CCGroup knowingly presented false testimony to the jury in *Cave Consulting Group, LLC v. OptumInsight, Inc.*, case number 11-cv-0469-EJD ("*Cave I*").  Joint Letter at 3–4. In the parties' joint letter, OptumInsight specifically states that it "does not ask this Court to decide [the] issue now" of whether the emails demonstrate knowing presentation of false testimony.  *Id.* at 3.

The Federal Rules of Civil Procedure allow a party to claw back inadvertently produced privileged or protected material:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B).  OptumInsight has not cited any doctrine or legal authority that would permit it to decline to return privileged communication inadvertently produced in this case and present those documents to the judge presiding over a separate case, and has chosen not to ask this Court to decide whether any exception to the applicable privileges apply.  OptumInsight is therefore ORDERED to destroy all copies of the material at issue in its possession.

## V.    CCGROUP'S RULE 30(b)(6) DEPOSITION NOTICE

The parties disputed the appropriate scope of the Rule 30(b)(6) deposition notice that CCGroup served on OptumInsight.  Joint Letter at 5–7.  At the hearing, the Court instructed the parties to meet and confer to resolve this issue.  The parties conferred in the courthouse after the

1    hearing and represented to the Court that these disputes have been resolved.

2    **VI.    PRE-2011 DOCUMENTS**

3            OptumInsight objects to producing documents that predate 2011 in response to certain of

4    CCGroup's requests for production related to damages, on the basis that "CCGroup admits that it

5    was neither sued nor directly threatened with OptumInsight's patents before January 2011," and

6    cannot bring an antitrust claim based on OptumInsight's mere possession of allegedly invalid or

7    unenforceable patents.  Joint Letter at 8–9 (citing, *e.g.*, *Cygnus Therapeutic Sys. v. ALZA Corp.*,

8    92 F.3d 1153 (Fed. Cir. 1996)).  OptumInsight is aware of no case "in which a competitor who has

9    neither been sued nor threatened with a patent has been permitted to assert antitrust claims," and

10   argues that if CCGroup had asserted such a claim, "OptumInsight could have moved to dismiss it"

11   at the pleading stage.  *Id.*

12           CCGroup argues that its Second Amended Complaint sufficiently puts OptumInsight on

13   notice of two theories of damages: damages resulting from OptumInsight's assertion of patents

14   against CCGroup beginning in 2011, and damages resulting from OptumInsight's advertisement

15   of its patents and assertion of them against other parties, "which prevented CCGroup from

16   competing on an equal footing" even before 2011.  *Id.* at 7.

17           CCGroup's *Walker Process* antitrust claim includes a broad assertion of damages for

18   "anticompetitive harm [CCGroup] has suffered as a result of OptumInsight's unlawful acquisition

19   and maintenance (or attempted acquisition and maintenance) of a monopoly in the Grouper

20   Software Market," distinct from damages for CCGroup's fees and costs as a result of the 2011

21   enforcement action.  *See* SAC ¶ 586.  CCGroup alleges that "OptumInsight was able to obtain [or]

22   maintain or . . . posed a dangerous probability of obtaining, a monopoly in the market for episode

23   grouper software" as a result of its *and Symmetry's* enforcement of patents "improperly obtain[ed]

24   . . . from the USPTO."  *Id.* ¶ 37.  Symmetry merged into OptumInsight and ceased to exist in

25   2007, well before OptumInsight filed its first action against CCGroup in 2011.  *Id.* ¶ 5.  CCGroup

26   also alleges that "OptumInsight was by far the dominant competitor" in the market for episode of

27   care grouper software "from 2005 until at least the end of 2014," and that it "obtained its dominant

28   position"—apparently in 2005—"by advertising, threatening to enforce, and enforcing a portfolio

1    of patents." *Id.* ¶¶ 30–31. Taken together, these allegations put OptumInsight on notice of

2    CCGroup's theory that OptumInsight (and its predecessor Symmetry) monopolized or attempted

3    to monopolize the grouper software market through improper patent enforcement beginning before

4    2011.

5          OptumInsight could have, but did not, move to dismiss that theory of the Second Amended

6    Complaint for lack of standing to bring a *Walker Process* claim based on enforcement against

7    third parties, or for failure to include sufficient factual allegations regarding such enforcement

8    actions to plausibly support the claim. With respect to the former, the Court declines to resolve

9    issues of standing and the viability of CCGroup's theory on a discovery motion, although

10   OptumInsight may bring such arguments at summary judgment. With respect to the sufficiency of

11   the factual allegations, the time for an *Iqbal* or *Twombly* challenge has passed. The scope of

12   discovery therefore includes CCGroup's theory that it was harmed by OptumInsight's attempted

13   monopolization through enforcement of invalid, unenforceable, or fraudulently obtained patents

14   before 2011.

15   **VII.     DEPOSITION OF PLAINTIFF'S ATTORNEY RICHARD BROPHY**

16         OptumInsight seeks to depose CCGroup's lead counsel Richard Brophy, primarily to test

17   the issue of whether CCGroup and its attorneys were sufficiently diligent in discovering

18   OptumInsight's alleged fraudulent behavior, which OptumInsight contends relates to the

19   timeliness of CCGroup's present claims. Joint Letter at 10. OptumInsight notes that at least four

20   of its own trial attorneys will be deposed by CCGroup. *Id.*

21         CCGroup argues that to overcome the presumption against depositions of an opposing

22   party's attorney, OptumInsight must show that "'(1) no other means exist to obtain the

23   information, (2) the information sought is relevant and nonprivileged, and (3) the information is

24   crucial to the preparation of the case.'" *Id.* (quoting *FTC v. DIRECTV, Inc.*, No. 15-cv-01129-

25   HSG (MEJ), 2016 WL 1741137, at \*2 (N.D. Cal. May 3, 2016)). The test stated in *DIRECTV*

26   originates from the Eighth Circuit's decision in *Shelton v. American Motors Corp.*, 805 F.2d 1323,

27   1327 (8th Cir. 1986), and has been widely adopted in this district. *See DIRECTV*, 2016 WL

28   1741137, at \*2 (collecting cases); *Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA (LB),

2012 WL 5988617, at *3 (N.D. Cal. Nov. 26, 2012) (same).  OptumInsight does not offer an alternative standard.  *See* Joint Letter at 10.

CCGroup argues that OptumInsight has not met its burden to show that no other means exist to obtain the information it seeks regarding CCGroup's diligence, noting that OptumInsight has not pursued the issue through interrogatories or a Rule 30(b)(6) deposition.  *Id.*  OptumInsight argues that Brophy would be an appropriate witness on the subject because he was CCGroup's lead counsel in *Cave I* and conducted the document review that CCGroup claims revealed fraud by OptumInsight.  *Id.*  According to OptumInsight, Brophy's "testimony is more relevant than that of multiple OptumInsight attorneys."  *Id.*  CCGroup contends that OptumInsight "never disputed" that its own attorneys were subject to deposition, and the fact that one party's attorneys are being deposed does not in itself justify deposing the opposing party's attorney.  *Id.*

Although Brophy's testimony might well be relevant to issues in this case, including CCGroup's diligence, relevance is not enough to depose an opponent's attorney.  OptumInsight neither addresses the "no other means" standard for compelling attorney testimony nor offers an alternative legal standard.  Moreover, at the hearing, CCGroup agreed that it would not present substantive testimony by Brophy in this matter, and OptumInsight represented that its concerns were resolved by that agreement.  OptumInsight has not met its burden to take Brophy's deposition under the *Shelton* standard, and the Court DENIES OptumInsight's request to do so.

**IT IS SO ORDERED.**

Dated: November 6, 2017

_____
JOSEPH C. SPERO
Chief Magistrate Judge

13